UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

<u>Lee T. Corrigan, LLC</u>

      v.                                     Civil No. 24-cv-418-LM
                                              Opinion No. 2025 DNH 109 P
<u>JP Morgan Chase Bank, NA</u>

**O R D E R**

Plaintiff Lee T. Corrigan, LLC ("Corrigan"), a New Hampshire-based General Contractor, brings suit against JP Morgan Chase Bank, NA ("Chase") seeking the return of funds that Corrigan wired to a Chase account that turned out to be controlled by an alleged criminal, posing as the intended recipient. Corrigan alleges that because Chase was aware that the actual account holder was not the intended recipient of Corrigan's funds, Corrigan is entitled to return of the funds under certain provisions of the Uniform Commercial Code (the "UCC") that govern electronic funds transfers.[1]

Before the court are: (1) Chase's motion to dismiss for failure to state a claim upon which relief can be granted (doc. no. 6) and (2) Corrigan's motion for leave to amend the complaint (doc. no. 9). Corrigan objects to Chase's motion to dismiss (doc. no. 7), and Chase objects to Corrigan's motion for leave to amend (doc. no. 10).

In support of its motion to dismiss, Chase argues (1) that as the bank that <u>received</u> the funds, it is not the proper party to refund Corrigan and that Corrigan

---

[1] Because Chase's principal office is in Ohio, the relevant UCC provisions are found in the Ohio Revised Code. <u>See</u> Ohio Rev. Code Ann. § 1304.85.

must instead seek a refund from the bank that <u>initiated</u> the transfer (i.e. Corrigan's own bank) and (2) that Corrigan has failed to sufficiently plead that Chase had actual knowledge that the owner of the account was not the intended recipient of the funds. In its proposed amended complaint (doc. no. 9-1), Corrigan seeks to (1) add the bank that initiated the funds transfer, Camden National Bank ("Camden"), as an additional defendant, (2) add a new claim for relief seeking return of the funds from Camden, (3) add a claim for declaratory judgment against Chase, and (4) supplement its factual allegations regarding Chase's knowledge that the person that controlled the account was not the intended recipient of the funds. For the following reasons, the court grants Chase's motion to dismiss (doc. no. 6) in part and grants Corrigan's motion for leave to amend (doc. no. 9) in full.

## STANDARD OF REVIEW

Under Rule 12(b)(6), the court must accept the well-pleaded factual allegations in the complaint as true, construe reasonable inferences in the plaintiff's favor, and "determine whether the factual allegations in the plaintiff's complaint set forth a plausible claim upon which relief may be granted." Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 68, 71 (1st Cir. 2014) (quotation omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Analyzing plausibility is "a context-specific task" in which the court relies on its "judicial experience and common sense." Id. at 679.

Under Rule 15(a), the court should freely give leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). This liberal standard does not mean, however, that every request for leave to amend should be granted. See Manning v. Bos. Med. Ctr. Corp., 725 F.3d 34, 60 (1st Cir. 2013). Instead, the court may deny a request for leave to amend when "the request is characterized by undue delay, bad faith, futility, or the absence of due diligence on the movant's part." Id. at 61 (internal quotation marks and brackets omitted). Amendment is futile when the proposed amended pleading "would fail to state a claim upon which relief could be granted." Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996). Thus, when a court simultaneously considers a motion to dismiss under rule 12(b)(6) and a motion to amend that is opposed on futility grounds, the standards merge. Id.

## BACKGROUND[2]

Corrigan is a general contractor based in Gorham, New Hampshire. The matter now before the court stems from a construction project Corrigan contracted to perform at Mount Washington State Park. As part of that project, Corrigan hired a subcontractor called "Newterra" based in Coraopolis, Pennsylvania.[3]

---

[2] The facts outlined in this section are drawn from the complaint (doc. no. 1), except where otherwise noted.

[3] The complete name of the subcontractor provided in the complaint is "Newterra."

Corrigan's contact at Newterra was Jen Savage, Newterra's accounts receivable manager. Corrigan corresponded with Savage by email and telephone. The domain name of Savage's email address was "@newterra.com." Doc. no. 1 ¶ 11.

Corrigan alleges, on information and belief, that a criminal "hacked into [its] computer system" and altered the system so that incoming email traffic from Newterra would be hidden from Corrigan's office manager. Id. ¶ 12. Corrigan also alleges on information and belief that the same criminal created a domain name similar to Newterra's which allowed the criminal to intercept and reply to Corrigan's emails with Newterra.

On December 13 and 18, 2023, Corrigan received a series of emails from the address "receivablesinc@newterra.com." While this address had a different username than the address at which Corrigan had previously corresponded with Savage, the domain name was the same.[4] The first email provided the correct reference number of an actual, legitimate Newterra invoice for $269,958.50, and also attached a correct copy of that invoice. In subsequent emails the sender identified themselves as Jen Savage, explained that Newterra was changing its payment protocols from check to electronic payment, and provided wire instructions to an account at Chase. Specifically, the wire instructions identified the recipient by

---

[4] The Court notes that, while the complaint alleges that a thief used "a domain similar to newterra.com" to monitor Corrigan's communications, the domain used by the purported thief appears, from the complaint, to be identical to the real Newterra domain. Doc. no. 1 ¶ 13.

the Chase account #021000021, and the beneficiary name "NewTerra Corp." <u>Id.</u> ¶
20.

In reliance on this series of emails, on January 9, 2024, Corrigan instructed
its bank, Camden,[5] to wire $269,958.50 to Newterra pursuant to the instructions.
On the same day, Camden transferred the funds to Chase, and Chase transferred
the funds to the holder of account #021000021.

On January 11, 2024, the real Jen Savage emailed Corrigan to inquire about
payment of the invoice. At this point, Corrigan learned that the real Newterra had
not received the January 9 wire transfer.[6] Following this discovery, on or about
January 12, 2024, Corrigan notified law enforcement that it had been the victim of
financial fraud.

In its initial complaint, Corrigan alleged the following additional facts
regarding the wire transfer at issue in this case:

- The Chase account #021000021 was not, in fact,
  controlled by "NewTerra Corp." but was instead
  controlled by a different entity: "Heavenly Funding,
  LLC." <u>Id.</u> ¶ 28.

- Heavenly Funding, LLC ("Heavenly") was at all relevant
  times owned by an individual named Jacob Saada.

- Corrigan had no financial obligations to either Heavenly
  Funding or Saada.

- Chase informed a Secret Service investigator that Saada
  controlled several accounts under different company

---

[5] The identity of Corrigan's bank is only discernable from the proposed
amended complaint, doc. no. 9-1.

[6] Corrigan alleges that it has since paid the invoice and Newterra has received
the funds.

names, and that each of those accounts had previously
received fraudulent wire transfers similar to the one
received from Corrigan.

- Chase transferred the funds to account #021000021
  despite the fact that it knew that account was controlled
  by Heavenly Funding, not NewTerra Corp.

Corrigan's proposed amended complaint contains three changes:

- Corrigan proposes adding Camden, its own bank, as a
  defendant, and adding an additional UCC claim seeking
  a refund from Camden.

- Corrigan proposes adding an additional count clarifying
  that it seeks a declaratory judgment against Chase
  declaring that the wire transfer was not effectively
  accepted by Chase under the UCC.

- Corrigan proposes adding additional language clarifying
  the import of its allegations regarding Chase's
  statements to the Secret Service that Saada's other
  accounts had previously received fraudulent transfers.

## DISCUSSION

Chase moves to dismiss the action in its entirety on two independent

grounds. First, Chase argues that Corrigan cannot bring a claim against Chase

under Ohio Rev. Code Ann. § 1304.62 because Corrigan is not in privity with Chase

and the statute imposes a privity requirement. Second, Chase argues that Corrigan

has failed to plead facts sufficient to plausibly allege that Chase had the actual

knowledge required to trigger the statute. Corrigan opposes Chase's motion to

dismiss, arguing that privity is not required to seek declaratory relief against Chase

under section 1304.62, and that its allegations regarding actual knowledge are

sufficient to warrant discovery on that issue. Additionally, Corrigan seeks to amend

its complaint to add its own bank, Camden, as a defendant, and to clarify the intended significance of one specific factual allegation. Chase opposes Corrigan's motion to amend on futility grounds.[7]

Because the parties' motions turn on overlapping issues and require consideration under a merged standard of review, the following discussion will address both motions simultaneously.

I.    Corrigan Cannot Recover a Refund from Chase Because it Lacks Privity, but Corrigan is Entitled to Seek Declaratory Relief Against Chase

Chase argues that Corrigan's claim under Ohio Rev. Code Ann. § 1304.62 must be dismissed because Corrigan is not in privity with Chase, and section 1304.62 imposes a privity requirement. While Chase is correct that section 1304.62 imposes a privity requirement for recovery, lack of privity does not foreclose the possibility of declaratory relief under the statute.

A.    Framing the Dispute

The parties' dispute regarding the significance of Corrigan's lack of privity with Chase reflects an apparent inconsistency in several courts' applications of

---

[7] In addition to its futility argument, Chase also urges the court to exercise its discretion to deny Corrigan's motion to amend on grounds of untimeliness. See Manning, 725 F.3d at 60 (The court may deny a request for leave to amend when "the request is characterized by undue delay, bad faith . . . or the absence of due diligence." (internal quotations omitted)). The court is satisfied with Corrigan's explanation that any delay in filing of the motion to amend was caused by uncertainty regarding the proper corporate name and address under which it could sue its own bank due to a pending merger. Thus, the court declines to dismiss the motion as untimely.

certain provisions within Article 4A of the UCC.[8] Generally speaking, Article 4A governs funds transfers—the transfer of funds from an account at one bank to an account at a second bank. See U.C.C. § 4A-104 (Unif. L. Comm'n 2024) (Funds Transfer—Definitions), see also Ohio Rev. Code Ann. § 1304.51 (2011) (codifying U.C.C. § 4A-104). In a funds transfer, the bank account holder that sends funds to another party is the originator, and the account holder that receives the funds is the beneficiary. Id. In the funds transfer at issue in this case, Corrigan was the originator, Heavenly was the beneficiary, Camden was the originator's bank, and Chase was the beneficiary's bank. For UCC purposes, the transfer at issue consisted of three concrete transactions: (1) Corrigan instructed Camden to transfer funds to the account identified at Chase; (2) Camden transferred funds to Chase with instructions regarding the intended beneficiary; and (3) Chase released those funds to the account controlled by Heavenly.

Section 4A-207(b) of the UCC, adopted as Ohio Rev. Code Ann. § 1304.62, states that, when a payment order from one bank to another (1) identifies the intended beneficiary by both a name and an account number, (2) the beneficiary's

---

[8] While the applicable law in this case is the UCC as adopted in the Ohio Revised Code, courts are encouraged to treat decisions from other jurisdictions interpreting the same UCC provision as persuasive authority in order to "promote the objective of uniformity" stated in the code itself. United Bank of Crete-Steger v. Gainer Bank, N.A., 874 F.2d 475, 478 n.5 (7th Cir. 1989); see also In re Varney Wood Prods., Inc., 458 F.2d 435, 437 (4th Cir. 1972); see generally 1 Lawrence's Anderson on the Uniform Commercial Code § 1-102:249 (3d ed. 2024) (collecting cases establishing that decisions interpreting the same UCC provision from other jurisdictions are not binding, but should be treated as persuasive authority).

bank "knows that the name and number identify different persons," and (3) no beneficiary identified by the payment order is actually entitled to receive the payment, then "no person has rights as beneficiary" and "acceptance of the order cannot occur." Ohio Rev. Code Ann. § 1304.62(B)(2) (2025). Courts generally agree on the basic application of this section to the factual scenario alleged by Corrigan: "[s]ubsection (b) prohibits acceptance if the beneficiary's bank knows that the payment order identifies the beneficiary by a name and bank account number belonging to different persons." Approved Mortg. Corp. v. Truist Bank, 106 F.4th 582, 589 (7th Cir. 2024).[9] The official comments to Section 207 make it clear that, if funds are nevertheless accepted by the beneficiary's bank and transferred to the unintended beneficiary, the "beneficiary's bank takes the loss." Id. at 590 (quoting U.C.C. § 4A-207, cmt. 2) (internal quotation marks omitted).[10] Here, Corrigan

---

[9] See also, e.g., Scura, Wigfield, Heyer, Stevens & Cammarota, LLP v. Citibank, NA, No. 2:21-cv-12835 (ES) (LDW), 2022 WL 16706948, at *2 (D.N.J. Oct. 3, 2022) (paraphrasing section 207(B): "if there is a conflict on the payment order between the name and the account number of the beneficiary . . . [s]ection 207[ ] imposes liability when the beneficiary's bank . . . knows that the name and number identify different persons[.] In that circumstance, Section 207[ ] provides that 'no person has rights as beneficiary' and 'acceptance of the order cannot occur.'") (third brackets in original) (citations and quotation marks omitted).

[10] The relevant section from comment 2 to Section 207 reads, in full:

If Beneficiary's Bank knew about the conflict between the name and number and nevertheless paid [the beneficiary], subsection (b)(2) applies. Under that provision, acceptance of the payment order of Originator's Bank did not occur because there is no beneficiary of that order. Since acceptance did not occur Originator's Bank is not obliged to pay Beneficiary's Bank. Section 4A-402(b). Similarly, [the originator] is

alleges that the payment order at issue identified NewTerra Corp by name but Saada's Heavenly Funding account by number, and that "despite knowing that the account was associated with Saada and Heavenly Funding, and not NewTerra, Corp., Chase transferred the payment order to Heavenly Funding."[11] Doc. no. 1 ¶ 49. Neither the parties, nor the caselaw, appear to dispute the conclusion that, if those allegations are proven to be true, the transfer of funds was not properly accepted by Chase under Ohio Rev. Code Ann. § 1304.62, and under that section, Chase will ultimately "take[ ] the loss." Approved Mortgage, 106 F.4th at 590 (quoting U.C.C. § 4A-207, cmt. 2).

The parties do dispute, however, the significance of that conclusion to this action, and the proper procedure for Corrigan to recover its funds. Chase contends that a party may only bring a claim under Ohio Rev. Code Ann. § 1304.62 against a party with which it is in privity—i.e., its own bank. Corrigan does not dispute that it may only <u>recover</u> from its own bank, but contends that it may nevertheless maintain a cause of action against Chase for declaratory relief—namely a declaration that the transfer was not properly accepted by Chase under Ohio Rev. Code Ann. § 1304.62. This dispute mirrors an apparent conflict in the caselaw interpreting Section 207, which seems to originate from a consequence of that section's drafting. As explained by the Seventh Circuit in <u>Approved Mortgage</u>: "Of

---

excused from its obligation to pay Originator's Bank. Section 4A-402(c). Thus, Beneficiary's Bank takes the loss.

[11] Chase disputes the sufficiency of Corrigan's allegations as to actual knowledge. This issue will be addressed below.

great importance to this case, Section 207 does not state what happens when funds are received by the beneficiary's bank despite the prohibition on acceptance. The statutory language states that acceptance 'cannot occur,' but does not explain the effect of the non-occurrence." Approved Mortgage, 106 F.4th at 589.

    B.    *Approved Mortgage*

        Chase's argument relies heavily on Approved Mortgage Corp. v. Truist Bank. In that case, the Seventh Circuit reasoned that, because Section 207 does not "explain the effect of the non-occurrence" of a transfer, one must look to another section of the UCC, Section 402, to understand the consequences of an improper acceptance under Section 207. Id. Section 402 "describes how the failure to complete a funds transfer through acceptance by the beneficiary's bank affects the payment obligations of the various parties to the transfer."[12] Id. Specifically, Section 402(C) explains that, where a payment order cannot be "completed by acceptance by the beneficiary's bank," the "obligation of [the] sender to pay its payment order is

---

    [12] UCC § 4A-402, adopted as Ohio Rev. Code Ann. § 1304.74, provides in relevant part:

> (C) . . . . With respect to a payment order issued to a receiving bank other than the beneficiary's bank, acceptance of the order by the receiving bank obliges the sender to pay the bank the amount of the sender's order. . . The obligation of that sender to pay its payment order is excused if the funds transfer is not completed by acceptance by the beneficiary's bank of a payment order instructing payment to the beneficiary of that sender's payment order.

> (D) If the sender of a payment order pays the order and was not obliged to pay all or part of the amount paid, the bank receiving payment shall refund payment to the extent the sender was not obliged to pay. . . .

excused. . . .” Ohio Rev. Code Ann. § 1304.74(C). Section 402(d) provides that if a

sender pays a payment order that it was not obliged to pay, it is entitled to a refund

from “the bank receiving payment.” Ohio Rev. Code Ann. § 1304.74(D). Section

402(d) is described in the official UCC comments as the “money-back guarantee.”

U.C.C. § 4A-402, cmt. 2.

Having established that Section 402 provides the avenue for a refund under

Section 207, the Approved Mortgage court next held that Section 402 imposes a

privity requirement for recovery under the money-back guarantee. The court based

this holding on Grain Traders, Inc. v. Citibank, N.A., 160 F.3d 97, 101-02 (2d Cir.

1998), endorsing both the textual and consequential reasoning of the Second Circuit

in that case. See Approved Mortg., 106 F.4th at 591. Specifically, the court endorsed

Grain Traders’ reasoning that Section 402’s privity requirement is “consistent with

the stated purposes of Article 4A” because it “advances the UCC drafters’ goal of

promoting ‘certainty and finality.’” Id. (quoting Grain Traders, 160 F.3d at 102). It

went on: “‘To allow a party to, in effect, skip over the bank with which it dealt

directly, and go to the next bank in the chain would result in uncertainty as to

rights and liabilities,’ and ‘create a risk of multiple or inconsistent liabilities.’” Id.

(quoting Grain Traders, 160 F.3d at 102). Having applied Grain Traders, the

Approved Mortgage court established the following premises: (1) that Section 402

provided the right to a refund for violations of Section 207, and (2) that Section 402

requires privity for recovery. Reasoning from these premises, the court concluded

that section 207 does not create a “cause[ ] of action distinct and independent from a

Section 402(d) refund action." Id. at 589. On that basis, the court upheld the dismissal of a claim by an originator against a beneficiary bank (the same relationship Corrigan has to Chase) for lack of privity. Chase urges this Court to reach the same result.

Importantly, in Approved Mortgage, the court acknowledged that when a transfer is accepted in violation of UCC § 4A-207(b), the beneficiary's bank (here Chase) ultimately "takes the loss" under § 4A-402. Id. at 590 (quoting U.C.C. § 4A-207, cmt. 2). It held, however, that the privity requirement in Section 402 served to ensure an "orderly unravelling" of the improper transfer, such that the originator must obtain its refund from the originator bank, the originator bank must obtain its refund from the beneficiary bank, and the beneficiary bank must seek to recover the improperly transferred funds from its account holder. Id. at 591 (quoting Grain Traders, 160 F.3d at 102).

Approved Mortgage thus does not absolve a beneficiary bank of liability for accepting a transfer in violation of Ohio Rev. Code Ann. § 1304.62. Instead, it merely establishes a necessary ordinal relationship between the plaintiffs and defendants in an action for recovery under that statute. Under the reasoning of Approved Mortgage, then, if Corrigan can prove that Chase accepted the transfer in violation of Ohio Rev. Code Ann. § 1304.62, Camden would be liable to refund Corrigan, and Chase would be liable to refund Camden.

C.    Elkin Valley Baptist Church

Corrigan invokes a different case, in which a claim by an originator against a beneficiary bank was allowed to proceed, but only insofar as it sought declaratory relief. See Elkin Valley Baptist Church v. PNC Bank, N.A., 748 F. Supp. 3d 293, 318 (W.D. Pa. 2024). There, the court acknowledged the reasoning and result in Approved Mortgage and took no issue with its holding that an originator could not recover directly from a beneficiary bank under Section 207 due to the privity requirement in Section 402. Nevertheless, the court declined to dismiss a claim by an originator against a beneficiary bank entirely, finding that insofar as the claim was for declaratory relief under Section 207, it could proceed. Specifically, the court found that "a declaration that [the beneficiary bank] had actual knowledge of a misdescription of the beneficiary at the time of the funds transfer, and that the payment order therefore could not be accepted pursuant to § 207(b)(2)" would resolve "an actual controversy between [the originator] and [the beneficiary bank]" which "might determine [the originator's] rights against [the originator's] bank." Elkin Valley Baptist Church, 748 F. Supp. 3d at 318 n.41. Under such circumstances, the court held, "the Declaratory Judgment Act authorizes [ ] relief 'whether or not further relief is or could be sought.'" Id. (quoting 28 U.S.C. § 2201).

At first blush, the result in Approved Mortgage—dismissal of the action in its entirety against the beneficiary bank alongside its holding that Section 207 does not create a cause of action "distinct and independent from a Section 402(d) refund action"—might seem to conflict with the result and holding in Elkin Valley Baptist

Church. Approved Mortgage, 106 F.4th at 589. The Elkin Valley court did not acknowledge such a conflict, though, and this Court is not convinced any true conflict exists.

The reasoning in Approved Mortgage rests entirely on the premise that, apart from a refund action under Section 402(d), an originator cannot seek any meaningful relief directly under Section 207. But neither the Approved Mortgage court, nor any other court that has reached a similar result, address the possibility of a claim for declaratory relief under Section 207, and the corollary that such a claim would not require invocation of Section 402 with its attendant privity requirement.[13] And importantly, the Elkin Valley court embraced the operative holding from Approved Mortgage: that the only cause of action for a refund must flow through Section 402, and thus an originator can only seek a refund from a bank with which it is in privity. Elkin Valley Baptist Church, 748 F. Supp. 3d at 316 ("Section 402 necessarily controls any right to repayment stemming from

---

[13] Chase identifies several cases that either explicitly endorse Approved Mortgage's reasoning and result or reach the same result independently. See Studco Bldg. Sys. US, LLC v. 1st Advantage Fed. Credit Union, 133 F.4th 264, 278-79 (4th Cir. 2025) (Wynn, J. concurring); Valley Chili Props., LLC v. Truist Bank, 738 F. Supp. 3d 846, 853 (W.D. Tex. 2024), appeal dismissed sub nom. Valley Chili Props., L.L.C. v. Truist Bank, No. 24-50602, 2024 WL 5347461 (5th Cir. Dec. 10, 2024); Zhejiang Matrix SCM Co., LTD v. PNC Bank, Nat'l Ass'n, Civil No. 23-0979, 2024 WL 1096534, at *4 (E.D. Pa. Mar. 13, 2024); Cosmopolitan Title Agency, LLC v. JP Morgan Chase Bank, N.A., 649 F. Supp. 3d 459, 464 (E.D. Ky. 2023); Scura, 2022 WL 16706948, at *4. Having reviewed each of these cases, the Court is satisfied that none offers any additional reasons for dismissal of the claims against Chase beyond those reasons already contained in Approved Mortgage. Accordingly, the Court focuses its analysis on Approved Mortgage as the most thorough and authoritative case supporting Chase's contention that the lack of privity necessitates dismissal.

section 207. . . Hence, the [originator] is not entitled to a refund under the Code directly from [the beneficiary bank], even if [the beneficiary bank] had actual knowledge of the name misidentification at the time of transfer and thus bears the loss under section 207(b).”). The only apparent conflict, then, stems from the broad statement in Approved Mortgage that Section 207 does not “create[] [a] cause[] of action . . . independent from a Section 402(d) refund action.” Approved Mortgage, 106 F.4th at 589. But given the fact that Approved Mortgage did not address the possibility of declaratory relief, its holding can be read more narrowly: Section 207 does not create a cause of action for recovery independent from a Section 402(d) refund action. Under this reading, any apparent conflict dissolves.

> D.    Textual and Consequential Analysis Both Support the Elkin Valley Approach

This Court agrees with the reasoning and result in Elkin Valley for several reasons. First, there is no textual basis for a privity requirement in Section 207 itself. Wheels Invs., LLC v. Wells Fargo Bank, N.A., No. 6:19-CV-658-GAP-EJK, 2021 WL 8895130, at *3 (M.D. Fla. Apr. 29, 2021). The privity requirement comes from Section 402’s refund remedy. A party that is not seeking a refund, but rather a declaration of rights under Section 207, has no need for Section 402, making its privity requirement inapplicable.

Second, the Declaratory Judgment Act plainly allows a party to seek declaratory relief in circumstances like these, even where it cannot seek any other form of relief, like damages. See 28 U.S.C. § 2201(a) (“In a case of actual controversy

within its jurisdiction. . . any court of the United States. . . may declare the rights and other legal relations of any interested party seeking such declaration, <u>whether or not further relief is or could be sought</u>." (emphasis added)). The primary limitation on a district court's power to consider a claim for declaratory relief is the same case-or-controversy requirement that underlies Article III standing. <u>See MedImmune, Inc. v. Genentech, Inc.</u>, 549 U.S. 118, 127 (2007) ("The phrase 'case of actual controversy' in the Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." (internal citation omitted)). To state a claim for declaratory relief, a plaintiff "must plausibly allege facts that, 'under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" <u>Saginaw Cnty., Mich. v. STAT Emergency Med. Servs., Inc.</u>, 946 F.3d 951, 954 (6th Cir. 2020) (<u>quoting</u> <u>MedImmune</u>, 549 U.S. at 127). To satisfy the case-or-controversy requirement, a plaintiff seeking declaratory relief must show that the declaration sought would redress an actual injury to the plaintiff, that is concrete, that is imminent or was already suffered, and that was caused by the defendant. <u>See</u> <u>Carman v. Yellen</u>, 112 F.4th 386, 399 (6th Cir. 2024).

The declaratory judgment sought by Corrigan satisfies this requirement. According to the complaint, Corrigan has suffered a concrete injury in fact: the loss of $265,958.50 that it intended to send to its contractor, Newterra, but which was instead transferred to Heavenly Funding, LLC. This loss was caused, in part, by Chase's acceptance of the transfer despite its knowledge that the payment order

contained a mismatch between the recipient account number and account name, in violation of Ohio Rev. Code Ann. § 1304.62. And crucially, a declaration from this court that Chase had actual knowledge of the mismatch at the time of acceptance, and that the acceptance was thus invalid under Ohio Rev. Code Ann. § 1304.62, would redress Corrigan's injury because it would establish that Corrigan is entitled to a refund from Camden under Ohio Rev. Code Ann. § 1304.74(D).

Finally, Chase invokes the consequential reasoning of Grain Traders and Approved Mortgage, that "'allow[ing] a party to, in effect, skip over the bank with which it dealt directly, and go to the next bank in the chain would result in uncertainty as to rights and liabilities,' and 'create a risk of multiple or inconsistent liabilities.'" Doc. no. 6-1 at 5. But applying Approved Mortgage to effectuate the result Chase seeks would have other problematic consequences, and could lead to the unintended result that Camden, rather than Chase, could end up "tak[ing] the loss," even though there is no suggestion that Camden should have suspected, or even could have discovered, that there was any reason not to process the transfer at issue.[14]

---

[14] While Approved Mortgage does address this risk, the Court is not persuaded to apply it here primarily because, as discussed above, it presumes that all relief under Section 207 must flow through Section 402, and does not account for the prospect of declaratory relief. See Approved Mortgage, 106 F.4th at 591. It states that the privity requirement of Section 402 "does impose a burden on 'innocent' banks," seemingly acknowledging that this outcome is not ideal, and responds that "[t]he imposition of this burden was a conscious choice of Article 4A's drafters" that was adopted by the state legislature. Id. This reasoning (i.e., that applying the privity requirement to dismiss Chase here could lead to a negative consequence, but is nevertheless required by the Code) is unpersuasive in light of the Court's conclusion

For example, <u>Approved Mortgage</u> establishes that if Chase did accept the transfer in violation of Ohio Rev. Code Ann. § 1304.62, then Camden must refund Corrigan, and Chase must refund Camden under Ohio Rev. Code Ann. § 1304.74. The question of Corrigan's entitlement to a refund from Camden, and Camden's concurrent entitlement to a refund from Chase, will turn on Chase's knowledge and conduct with respect to the transfer. Both parties' right to a refund is likely to hinge on the decisive question of whether Chase had actual knowledge of the mismatch at the time it accepted the order. Thus, were the court to follow <u>Approved Mortgage</u> (as interpreted by Chase), the result would be that Corrigan could maintain a suit against Camden for a refund in which Camden's liability would turn on factfinding regarding Chase's knowledge at the time of acceptance, but Chase would no longer be a party to that suit.

This scenario would raise multiple additional procedural anomalies. First, Chase—the entity whose knowledge and conduct would be central to the dispute— would be absent, likely requiring third-party discovery to illuminate the central questions of fact.

Second, the adversity of interests between the present parties would be muddled, as Camden would be called to effectively fight Chase's battle for it. On the one hand, Camden would be incentivized to obtain a finding that Chase <u>did not</u> improperly accept the transfer, because such a finding would absolve Camden of

_____

that the text of Section 207 permits a claim for declaratory relief against Chase directly.

liability to refund Corrigan. On the other hand, if Chase <u>did</u> improperly accept the transfer Camden would be entitled to a refund from Chase. Thus, Camden's true incentive would be to avoid the obligation of obtaining its refund from Chase, but that incentive pales in comparison to Chase's incentive if it were present: to actually avoid "tak[ing] the loss." U.C.C. § 4A-207, cmt. 2. This arrangement would not lead to proper adversarial development of the key issues regarding liability.

Third, as discussed above, if Chase's motion is granted, a real risk would ensure that Camden could be left holding the bag for Chase's failure, despite the fact that no one has ever claimed that Camden did anything wrong. This risk is especially concerning because a knowledge determination against Chase in this case would not have preclusive effect in the necessary follow-up action by Camden to make itself whole. If Chase were to be dismissed, and Corrigan were to succeed in obtaining a refund from Camden, Camden would be left to seek its own refund from Chase in a second action. Because Chase would not have been a party to the first action, and because, for the reasons just discussed, Chase and Camden would not have had privity of interest with respect to that first action, a knowledge determination against Chase in the first action would not have preclusive effect against Chase in the second action by Camden. <u>See</u> <u>In re E. I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.</u>, 54 F.4th 912, 921-22 (6th Cir. 2022) (discussing nonmutual offensive collateral estoppel: "the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the previous action." (internal citations and quotation marks omitted)). Thus, Camden, rather

than Chase, could end up "tak[ing] the loss," even though there is no suggestion by any party that Camden should have done anything differently than it did.

Importantly, each of the above-described issues are not unique to the circumstances of this case—they are inherent to the structure created by UCC §§ 4A-207 & 402. Under that structure, the originator generally will be the party with an incentive to seek a refund, because it will be the party that suffered the loss when its funds were transferred to an unintended beneficiary. But the beneficiary's bank will likely be the only bank with any reason to know or suspect that there is a mismatch between the name and account number of the beneficiary, because it is the party in possession of the records necessary to compare the actual account information to the information contained in the transfer instructions. Indeed, beyond having reason to suspect a mismatch, the originator's bank would likely not even have the ability to discover whether the beneficiary name and account number match, even if it chose to investigate.

Thus, the problematic scenario that Chase's motion, if granted, would precipitate here would become the ordinary course: originators injured by botched transfers would sue their own bank for a refund based on the failure of the beneficiary bank, and if successful, the originator's bank would be left to try to recoup from the beneficiary bank, which was the culpable party all along. This regime cannot be squared with the official UCC comments, which state explicitly that the beneficiary bank "takes the loss" when it is at fault for processing a transfer despite knowing of a mismatch. U.C.C. § 4A-207, cmt. 2. Because there is

21

no textual basis in Section 207 to preclude a claim for declaratory relief under that section, and because the Declaratory Judgment Act authorizes such a claim, this Court cannot conclude that the Code imposes such a regime.

II.    Corrigan's Allegations Regarding Chase's Knowledge are Sufficient to State a Claim for Relief Under Ohio Rev. Code Ann. § 1304.62

Chase argues that Corrigan's allegations regarding knowledge are insufficient to state a claim for two reasons: (A) the Code requires actual knowledge and Corrigan's complaint alleges a lack of diligence (or mere constructive knowledge); (B) to the extent Corrigan alleges actual knowledge, he does so in a conclusory manner that is insufficient to state a claim. The court is not persuaded by Chase's arguments and is satisfied, at this early stage, that Corrigan has plausibly alleged actual knowledge and is entitled to discovery on that issue.

To start, Chase is correct that Corrigan will need to establish that Chase had actual knowledge of the mismatch at the time of the transfer in order to prevail on each of its claims. The text of Ohio Rev. Code Ann. § 1304.62 admits no other interpretation, and courts have consistently upheld this requirement. See, e.g., Kent Grp. Partners, LLC v. Citizens Bank, Nat'l Ass'n, 688 F. Supp. 3d 608, 612 (N.D. Ohio 2023), aff'd sub nom. Kent Grp. Partners, LLC v. Citizens Bank, NA, No. 23-3743, 2024 WL 945239 (6th Cir. Mar. 5, 2024) ("Knowledge, as contemplated in section 1304.62(B)(1), is actual, not constructive knowledge."); Metro Denv. Title, LLC v. JPmorgan Chase Bank, N.A., No. 1:21-cv-02705-RMR-SKC, 2022 WL 17547943 *2 (D. Colo. Aug. 16, 2022), report and recommendation adopted sub

nom. Metro Denv. Title LLC v. JPMorgan Chase Bank, NA, 2022 WL 17547945 (D.

Colo. Sept. 1, 2022) ("The time of payment is the pertinent time at which knowledge

or lack of knowledge must be determined.") (quoting U.C.C. § 4A-207 cmt. 2). It is

equally clear that Section 207 imposed no duty on Chase to investigate whether a

mismatch existed, which further emphasizes that allegations regarding lack of due

diligence, or a failure to reasonably investigate, cannot satisfy Corrigan's pleading

burden. Metro Denver Title, 2022 WL 17547943 *2 ("To the extent Plaintiff alleges

Defendant should have practiced due diligence to verify the beneficiary associated

with each account number, the statute does not impose that duty."); accord U.C.C.

§ 4A-207, cmt. 2 ("Beneficiary's Bank has no duty to determine whether there is a

conflict and it may rely on the number as the proper identification of the beneficiary

of the order.").

Nevertheless, the Court is satisfied that Corrigan has plausibly alleged

Chase's actual knowledge at the time Chase transferred the funds. Ocasio-

Hernández v. Fortuño-Burset, 640 F.3d 1, 7 (1st Cir. 2011). Specifically, Corrigan

alleges that "despite knowing that the account was associated with Saada and

Heavenly Funding, and not NewTerra, Corp., Chase transferred the payment order

to Heavenly Funding." Doc. no. 1 ¶ 49. This alleges actual knowledge.

Chase nevertheless contends that, to the extent this alleges actual

knowledge, it is too conclusory to satisfy Corrigan's burden under Rule 12(b)(6). See

Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012) ("Conclusory legal

allegations. . . need not be credited," and are not sufficient to satisfy a plaintiff's

pleading burden.). While the allegations in paragraph 49 of the complaint, alone, might be too conclusory to state a claim, Corrigan alleges additional specific facts from which the court can infer actual knowledge. Specifically, Corrigan alleges that Chase "informed a forensic analyst with the United States Secret Service" that it was aware "that Saada controls several accounts under various company names, that have all received similar fraudulent wires, and that Corrigan's [fraudulent wire] was not the first." Doc. no. 1 ¶ 37 (alteration in original). Read favorably to Corrigan, this allegation supports the reasonable inference that, at the time of the transfer at issue, Chase discovered the mismatch. At this early stage, these allegations, taken together, are sufficient to "nudge[]" Corrigan's "claims across the line from conceivable to plausible" and satisfy its pleading burden under Rule 12(b)(6). Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).[15]

## CONCLUSION

For the reasons explained above, the pending motions are resolved in the following manner:

Chase's motion to dismiss (doc. no. 6) is granted to the extent that Corrigan cannot state a claim for damages against Chase, and is otherwise denied.

Corrigan's motion for leave to amend (doc. no. 9) is granted. Corrigan is directed to file its amended complaint on or before September 29, 2025.

---

[15] Rule 9(b) specifically states that, unlike fraud or mistake, "knowledge. . . may be alleged generally," which further supports denial of Chase's motion on grounds that Corrigan's allegations of actual knowledge were insufficiently specific or concrete. Fed. R. Civ. P. 9(b).

Following this order two claims remain: (1) a claim against Chase under Ohio Rev. Code Ann. § 1304.62 for declaratory relief only; and (2) a claim against Camden for damages under Ohio Rev. Code Ann. §§ 1304.62 & 1304.74.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

September 15, 2025

cc:    Counsel of Record

25